[Civil No. 2014.  Filed September 27, 1922.]

[209 Pac. 294.]

## STATE, Appellant, v. LUMBERMEN'S INDEMNITY EXCHANGE, a Corporation, Appellee.

1. INSURANCE—STATE MUST PAY EXAMINER'S FEES FOR INVESTIGATING FOREIGN INSURANCE COMPANIES BEFORE LICENSING THEM IN THE STATE.—Civil Code of 1913, paragraph 3380, provides that the expense of investigating a foreign insurance company before licensing it to do business in the state "shall be borne . . . by the company so examined," but, evidently contemplating that the state would have in its employ regularly a salaried examiner for that purpose, provided further: "But the examiner or examiners . . . shall not charge any fee to, nor receive any compensation from any insurance company for their services, and shall be allowed only their actual traveling . . . expenses." *Held* that, though the state subsequently is without a regular examiner, it cannot, in contravention of the statute, charge a company directly or indirectly for the services of an examiner hired especially to investigate it.

2. STATUTES—SPECIFIC PROVISIONS OF STATUTE CONTROLLING.—Specific provisions of a statute inconsistent with general provisions will be adhered to as more definite expressions of the legislative will.

3. INSURANCE—AGREEMENT OF INSURANCE COMPANY TO PAY STATE EXAMINER FOR HIS SERVICES UNENFORCEABLE.—An agreement by a foreign insurance company to pay for the services of an examiner necessary before it could be licensed to do business in the state, made in contravention of Civil Code of 1913, paragraph 3380, requiring the state to pay for such services, *held* unenforceable against the company.

APPEAL from a judgment of the Superior Court of the County of Maricopa.  R. C. Stanford, Judge. Affirmed.

Mr. W. J. Galbraith, Attorney General, and Mr. Geo. R. Hill, Assistant Attorney General, for the State.

Mr. C. B. Wilson, for Appellee.

McALISTER, J.—The Lumbermen's Indemnity Exchange, a fire insurance company organized and

existing under the laws of Washington, applied to the
Arizona Corporation Commission in September, 1920,
for a license to transact business in this state, and in
performance of its duty upon the filing of such an ap-
plication the Commission appointed an examiner and
°one assistant to go to the city of Seattle in said state
to examine the books of account, records, and papers
of said company. It was understood and agreed at
the time by both parties that the expenses of the ex-
amination and investigation would be paid by the
company as required by statute, and, in accordance
therewith the examiner and his assistant went to
Seattle for this purpose.   Upon their return appell-
ant paid them $674.97, which was made up of the
following items: $274.97 for railroad fare, hotel,
meals, telegrams and other necessary expenses in
making the trip; $250 for the services of the examiner,
ten days at $25 per day, and $150 for the services of
the assistant examiner, ten days at $15 per day.   A
special demurrer to the items constituting the compen-
sation for the services of the examiner and his assistant
was interposed and sustained, whereupon judgment
for the sum of $274.97 was confessed by appellee
and entered by the court, and it is from this judg-
ment that appellant has brought the case here for
review.

The only question presented is whether an insurance
company applying for a license to do business in this
state is liable for the services of an examiner and his
assistant in making an investigation or examination
of its condition, it being conceded that it must pay the
expenses necessarily incurred in such an undertaking.
Appellant contends that the services of the examiner
is just as much a part of such expense as his railroad
fare or hotel bills, while appellee claims that they are
not, the contention of each being based upon para-
graph 3380 of the Revised Statutes of 1913 (Civ.
Code), the pertinent parts of which read as follows:

"3380. The expense of every examination and investigation of any insurance company as provided for in the preceding sections shall be borne and paid by the company so examined, but the examiner or examiners in making such examination or investigation shall not charge any fee to, nor receive any compensation from any insurance company for their services, and shall be allowed only their actual traveling and necessary expenses required by such examination. For the services of all others employed in making such examination or investigation the company being examined shall be charged the actual amount paid for their services plus their actual traveling and necessary expenses required by such examination. All charges for making such examination or investigation shall be presented in the form of an itemized statement approved by the Corporation Commission and audited by the auditor of the state and paid on his warrant drawn in the usual manner on the state treasury to the person making the examination. The company examined on receiving a certified copy of such statement so approved shall pay the amount over to the Corporation Commission to be by it paid into the state treasury to replace the amount drawn out as provided."

It is apparent from this that the expense of every examination and investigation of an insurance company shall be paid by the company examined, and that the examiner shall neither charge to nor receive from such company any compensation for his services, but shall be allowed only his necessary traveling expenses. The second sentence, however, provides that the services plus the actual traveling and necessary expenses of all others employed in making the examination shall be charged to the company examined, but the latter part of the paragraph provides that payment for all charges to the person conducting the examination shall be made by the state treasurer upon a warrant of the state auditor drawn upon the presentation to the latter of an itemized statement audited by him after approval by the Corporation Commission. A

certified copy of this statement is then forwarded by the Corporation Commission to the company examined, and it pays the amount thereof to the Commission, which in turn pays it into the state treasury to replace the amount paid the examiner. From this it follows that the company's obligation does not arise until the examination has been made, and that no authority is conferred upon it to pay the examiners directly at any stage of the investigation either their *per diem* or expense money. The payment, therefore, of no part of the expense is required previous to the completion of the examination and the receipt by the company of a proper statement showing the items of expense it is obligated to meet. What are these? The actual traveling and necessary expenses of the examiners, and the services, plus the actual traveling and necessary expenses of all others employed in making the examination. It is specially provided, however, that the examiners shall not charge any fee to nor receive any compensation from the company examined for their services, and a fair construction of this provision, not only prohibits the examiner himself from making such a charge or receiving such compensation directly, but prevents him from doing so indirectly through the auditor and treasurer with the approval of the Corporation Commission. The succeeding clause, when read in the light of the entire paragraph, stating that the examiners "shall be allowed only their actual traveling and necessary expenses required by such examination," means merely that these expenses shall be a proper charge against the company to be paid to the Corporation Commission in the way provided at the conclusion of the investigation, and not to the examiner direct as they are incurred. It would be contrary to the meaning intended to hold that the examiner himself could neither make this charge nor receive such compensation, but that the Corporation Commission could, for

this would permit to be done indirectly what the statute forbids, since the payment under these conditions, though to the Corporation Commission, would be none the less in settlement of the examiner's services.

This view is confirmed by the fact that immediately following the sentence denying the examiner the right to charge the company for his services is one providing specially that the company shall be charged for the services of all others employed in making the examination, thus placing the compensation of the examiners themselves and those employed to assist them upon a different basis, the services of the latter only being made a charge against the company. While, therefore, the compensation of the examiner may be a part of the expense of making an examination of an insurance company where the commission appoints one specially for a particular piece of work, yet the special provision that his services shall not be a charge against the company must prevail, for "where general terms or expressions in one part of a statute are inconsistent with more specific or particular provisions in another part, the particular provisions will be given effect as clearer and more definite expressions of the legislative will." 36 Cyc. 1130. The statute, excepting the services of the examiner from the expenses of an examination which the insurance company must bear, was evidently drawn upon the theory that under paragraph 3379 of the Revised Statutes of 1913 the Commission would have regularly in its employ salaried persons qualified to perform this service; but the fact that it does not have them, as appellant states in its brief is true, does not relieve the state from the obligation of paying them when they are employed. Hence the *per diem* of the examiner has no place in the statement upon the receipt of a certified copy of which the company remits to the Corporation Commission.

It is contended further that, inasmuch as it appears from the complaint that appellee agreed before the examiners were appointed and the investigation made that it would pay for their services, it should be compelled to live up to its agreement, even if it be held that the statute does not make them a legal charge against the state. We think, however, that appellee's obligation in the premises is measured by the terms of the statute providing what part of the expenses of the examination it shall bear, and that since the services of the examiners are especially excepted from these, the agreement that it would pay for them is unenforceable. The Commission could require of the company in the first instance only what the statute permits, and necessarily its right to redress is similarly circumscribed.

The judgment of the lower court is affirmed.

ROSS, C. J., and FLANIGAN, J., concur.